UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BRIAN CARMICHAEL | 1:13-CR-194-SEB-TAB |

### Government's Sentencing Memorandum

The United States of America, by counsel, Josh J. Minkler, United States Attorney; Steven D. DeBrota, Senior Litigation Counsel; Jake Schmidt, Special Assistant United States Attorney; John C. Cruden, Assistant Attorney General, Environment and Natural Resources Division, United States Department of Justice; and Thomas T. Ballantine, Assistant Section Chief, Environmental Crimes Section, Environment and Natural Resources Division, hereby submits its Sentencing Memorandum in advance of the hearing presently scheduled for December 18, 2015.

For the reasons stated below, and the additional grounds the United States intends to present during the sentencing hearing, the government respectfully submits that the Court should sentence Defendant Carmichael pursuant to the Plea Agreement he entered into under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure and impose a sentence of 5 years of imprisonment, followed by a three year period of supervised release. See Plea Agreement, Dkt. No. 7, ¶ 6. The Court should also order restitution, as further described below.

## Introduction

Between 2009 and 2011, Defendant Brian Carmichael ("Carmichael") conspired to defraud the United States and to commit federal crimes involving his operation of two companies, e-biofuels, LLC—an Indiana company that served as the front for a massive multi-state fraud scheme—and Element Alternative Energy—an Oregon company that Carmichael used to market e-biofuels product after he left Indiana. The conspiracy victimized federal taxpayers by causing the U.S. Treasury to issue well in excess of $20M in fraudulent tax credits to e-biofuels and its defrauded customers.[1] The conspiracy also victimized companies that bought biodiesel sold by e-biofuels. These entities paid grossly inflated fuel prices for over 35,000,000 gallons of biodiesel in the belief that the fuel came with legitimate renewable fuel credits (known as "RINs"), while the conspirators knew that the fuel could not be used to claim RINs because e-biofuels had not produced it from raw feedstock, as the law required. Instead, the conspirators procured biodiesel that had already been stripped of tax credits and RINs, and then falsified paperwork to make it appear as though those two government incentives were still assigned to the fuel. Finally, the conspiracy frustrated the environmental and energy independence aims of the Energy Independence and Security Act of 2007, by creating some 57,000,000 illusory RINs, which appeared to represent successful production

---

[1] To date, the Internal Revenue Service (IRS) has not sought to recover tax credits that the e-biofuels fraud caused IRS to issue to third party customers of e-biofuels. Thus, the tax credit losses in this case are losses from the United States treasury.

and use of clean biodiesel, but did not, and whose existence suppressed market demand for genuine biodiesel.

The result was wide-ranging and outsized harm to businesses and individuals involved in the renewable fuels industry. The conspiracy represents what is believed to be 1) the largest tax fraud case ever in the Southern District of Indiana; 2) the second-largest fraud case in this district—behind <u>United States v. Tim Durham</u>; and 3) the most significant environmental crime in Indiana history (far exceeding the losses from the White River fish kill case in 1999). Carmichael's part in this conspiracy involved serious federal crimes, which deserves a sentence at the top of the statutory range of 0 to 60 months for the single conspiracy count against him. 18 U.S.C. § 371.

The parties agreed to a 60-month sentence, which falls below the advisory range of 108 to 135 months provided by the Sentencing Guidelines as applied to the facts of this case (Level 31 at Criminal History Category I). The requested sentence of 60 months would reflect the equivalent of a six-level downward departure to a total offense level of 25, i.e., a sentencing range of 57-71 months.[2] The applicability of this advisory guideline range is uncontested and the government believes the range is appropriate in light of all applicable facts, special offense characteristics, and sentencing enhancements. As the Court

---

[2] The Plea Agreement did not obligate the United States to file a motion for a departure for substantial assistance to authorities under U.S.S.G. § 5K1.1. Rather, the Plea Agreement is structured to obligate the United States to agree to the 60 month sentence and file no further charges against the defendant so long as he complies with all of his obligations under the agreement.

knows, the advisory range is the starting point of the statutory sentencing analysis. 18 U.S.C. § 3553.

### A.   Overview of the Case

Carmichael's crime is described in the Information in this matter and the detailed agreed factual basis filed with the Plea Agreement. He has fully and timely accepted responsibility for these crimes. He also cooperated with the United States in its investigation of the scheme. This included extensive debriefings. He was the first member of the conspiracy to cooperate with the United States in the investigation of these offenses.

This Sentencing Memorandum will provide details concerning Carmichael's crime and the results of the extensive investigation into his conduct and that of his co-conspirators. Consideration of these facts is appropriate under the statutory sentencing factors in 18 U.S.C. § 3553, which include the nature and circumstances of the offense, the defendant's history and character, the need to promote respect for the law, and the need to provide just punishment.

### B.   Scope of Investigation

Over the course of the present investigation, federal investigators conducted multiple search warrants in three states, analyzed seized computer data, and combed millions of corporate records and communications. The purpose of this work was to locate and identify each conspirator and identify his or her relative culpability. This was an exacting process that involved the careful

consideration of the evidence in each instance, together with any metadata. The analysis took months. During and after the searches, the government interviewed many witnesses, including people who worked directly for and with Carmichael and the other conspirators.

After the government developed a preliminary understanding of the criminal conduct, it presented an outline of its findings to Carmichael (and his co-conspirators). Soon thereafter, Carmichael proffered his understanding of the conspiracy and the underlying substantive wire fraud. In the end, the United States was able to substantially corroborate the information Carmichael provided, which resulted in the plea agreement in this case.

### C. Investigative conclusions

The Court is familiar with the allegations in this case through the factual statements accepted during each individual defendant's plea hearing in the related case, No. 13-cr-189. In short, the defendants in both cases were engaged in a multi-state conspiracy to claim tax credits and RINS on biodiesel that had already been used to claim those subsidies.

Carmichael was a co-conspirator, first in Indiana and then—after transferring his stake in e-biofuels to Imperial Petroleum for promised future payments—in Oregon, where he founded Element Alternative Energy. By his admission, he was present at the inception of the fraud, participated in it, and knew that—with his help and that of his co-conspirators—e-biofuels was selling

5

millions of gallons RIN-stripped B99 biodiesel as if it were B100 with RINs.[3] Further, Carmichael knowingly used Element Alternative Energy to trade in and distribute that product to third-party buyers. This was lucrative—Carmichael obtained excellent prices, as well as a commission from e-biofuels.

Carmichael admitted his guilt relatively early in the investigation, entered into a plea agreement, and gave statements explaining his involvement in the conspiracy, as well as the involvement of others. His early confession and genuine remorse led the United States to offer him a cooperator's plea agreement under Rule 11(c)(1)(C). That agreement set his period of incarceration at five years, the maximum sentence for the conspiracy count he pleaded guilty to, but substantially less than his total potential exposure. This deal recognized the importance of his early cooperation and the likely impact his continued cooperation would have had if the companion case had gone to trial. Carmichael's co-conspirators all pleaded guilty, most of them on the eve of trial. The government considers his timely admission of guilt to have been an important factor that resulted in just plea agreements with the other defendants.

Carmichael could have been prosecuted for the majority of the crimes charged against his co-conspirators, i.e., the crimes charged in United States v. Craig Ducey, 13-cr-189, and his U.S. Sentencing Guidelines Offense Level of 31

---

[3] The designation of fuel as B100 or B99 is significant. The $1/gallon tax credit can be claimed by blending 100% biodiesel—which is known in the industry as B100—with 1% petroleum diesel. This blending creates a product called B99 (99% biodiesel and 1% petroleum diesel). Thus, a gallon of B100, which can be used to claim the $1/gallon tax credit, is worth approximately $1 more than a gallon of B99 that has no available tax credit.

reflects that relevant conduct. Under the Sentencing Guidelines, the offense level leads to a recommended sentence of 108-135 months for a person with a Criminal History Category of I.

### D.     Recommendation

In accordance with his plea agreement, and as required by Rule 11(c)(1)(C), the United States recommends that the Court sentence Carmichael to five years of imprisonment and that it order him to pay restitution to the victims in this case. Presently, the United States estimates that the restitution should be paid as set forth in Appendix A. But there are victims who have not responded to the government's request for information regarding loss, so it is anticipated that the final restitution order may need to be delayed for some period of time after the sentencing hearing.

The United States has recently received several responses to correspondence it sent to victims. In addition to early victim letters, the government sent letters with specific estimated restitution amounts when the court set the sentencing date. As discussed in Appendix A, the best estimate for restitution to victim businesses addresses losses incurred when those businesses were required to replace RINs that proved to be fraudulent. However, because some businesses that replaced RINs recovered payments from brokers and other intermediate RIN owners, there are second-order effects that alter the loss amounts.

Therefore, pursuant to 18 U.S.C. § 3664(d)(5), the government informs the Court that all of "the victim[s'] losses [were] not ascertainable" prior to the December 18 sentencing date. In this circumstance, Section 3664(d)(5) states that the Court must "set a date for the final determination of the victim[s'] losses, not to exceed 90 days after sentencing." Id. The government recommends that the Court set a date during the week of March 14, 2016, for the following reasons.

There are other defendants who, like Carmichael, will have restitution obligations. Those obligations should be imposed jointly and severally. Because of that, the government recommends to the Court that it set a hearing date on restitution for Defendants Carmichael, Chris Ducey, and Furando during a week when all the remaining defendants can be sentenced. Based on the current trial schedule in the companion securities fraud case, the government anticipates that all of the defendants could be sentenced during the week of March 14.[4]

Because the government anticipates that restitution will exhaust Carmichael's assets, it does not recommend a sentence of a fine. Carmichael must pay the $100 special assessment for his felony conviction.

---

[4] The related case, United States v. Jeffrey Wilson, 13-cr-190, remains to be tried and the government anticipates that several of the defendants in Case No. 13-cr-189 will be witnesses at that trial. The government prefers that they be sentenced after they testify, to permit the court to sentence them in light of their cooperation, if any. A sentencing date during the week of March 14 would allow that, if the trial date for Case No. 13-cr-190 holds. As the Court is aware, Defendant Wilson has a serious illness. Counsel for Defendant Wilson has informed the United States that Defendant Wilson planned to meet with his doctors last week and that the defense will have a clearer picture of Wilson's capacity to prepare for trial as a result of that appointment.

This sentencing recommendation is based on the Plea Agreement in this case, which reflects the government's assessment of the Sentencing Guidelines, including provisions addressing both Carmichael's criminal conduct and his timely and substantial assistance. The agreement also reflects the government's assessment of the sentencing factors set out at 18 U.S.C. § 3553. Taking all of that into account, Carmichael and the government reached an agreement with a determinate prison sentence of five years.

**F.  Conclusion**

In light of the above, the government will ask the Court to issue the sentence set forth above in the Recommendation section.

Respectfully submitted,

JOSH J. MINKLER
United States Attorney

By: /s/ Steven D. DeBrota
Steven D. DeBrota
Senior Litigation Counsel
U.S. Attorney's Office
10 West Market Street Suite 2100
Indianapolis, Indiana 46204
(317)226-6333
Steve.Debrota@usdoj.gov

By: /s/ Jake Schmidt
Jake Schmidt
Special Assistant United States Attorney

                    JOHN C. CRUDEN
                    Assistant Attorney General
                    Environment and Natural Resources Div.
                    U.S. Department of Justice

By: /s/ Thomas T. Ballantine
     Thomas T. Ballantine
     Environmental Crimes Section
     Environment and Natural Resources Div.
     601 D St. NW
     Washington, D.C. 20004
     (202)514-2956
     Thomas.Ballantine@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2015, a copy of the foregoing Sentencing Memorandum was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: s/Steven D. DeBrota
     Steven D. DeBrota
     Senior Litigation Counsel
     Office of the United States Attorney
     10 W. Market Street, Suite 2100
     Indianapolis, IN 46204-3048
     Telephone: (317) 226-6333
     Fax: (317) 226-6125
     Email: Steve.DeBrota@usdoj.gov